

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:VC
F. #2024R00381

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 28, 2025

<u>By ECF</u>

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Efrain Cortes
     <u>Criminal Docket No. 24-CR-276 (PKC)</u>

Dear Judge Chen:

  The government respectfully submits this sentencing memorandum in advance of the sentencing hearing for defendant Efrain Cortes, which is currently scheduled for September 3, 2025. On January 8, 2025, the defendant pleaded guilty to Counts One and Three of the indictment charging him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). For the reasons discussed below, the government respectfully requests that the Court impose a sentence within the range of 46 to 57 months' imprisonment, which is consistent with the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") range as calculated by the U.S. Probation Office. The government submits that such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

I. <u>Background</u>

  A. <u>The Offense</u>

  The relevant facts are set forth in the Presentence Investigation Report dated April 17, 2025 ("PSR"). In March 2024, the New York City Police Department ("NYPD") received a tip that the defendant possessed a firearm. <u>See</u> PSR ¶ 8. On April 8, 2024, the defendant was operating a motor vehicle on Staten Island. <u>See id.</u> ¶ 9. This was problematic for two reasons: First, the defendant's driver's license was suspended. <u>See id.</u> Second, the vehicle's license plate was not associated with the vehicle. <u>See id.</u> Accordingly, NYPD officers conducted a traffic stop of the vehicle in the vicinity of Victory Boulevard and Cebra Avenue. <u>See id.</u> The defendant admitted to officers that he was carrying a firearm in his vest pocket. <u>See id.</u> A search

during the vehicle stop revealed that the defendant did in fact possess "a Raven Arms MP-25 .25 caliber semi-automatic pistol, loaded with five bullets in the magazine and one bullet in the chamber" (pictured below).  Id.



A later search of the defendant's vehicle uncovered 76 methamphetamine tablets and 57 vials of cocaine, as well as a scale, two trays and three zip lock bags—a drug dealer's tools of the trade.  See id. ¶ 10.  Later laboratory testing confirmed that the zip lock bags contained cocaine totaling 0.427 grams and the tablets were methamphetamine totaling 31.679 grams.[1]  See id.

B.     The Defendant's Criminal History

The defendant's extensive criminal history, described below and in the PSR, exhibits a pattern of serious run-ins with the law, despite receiving four incarceratory sentences.

This is not the defendant's first arrest related to a firearm.  According to an NYPD arrest report, on September 20, 2012, the defendant pointed a loaded firearm at a victim during an argument.  See PSR ¶ 30.  The defendant and the victim wrestled over the firearm and a round was discharged.  See id.  The defendant was ultimately convicted of attempted criminal

---

[1]     The PSR accurately states that only 35 of the 76 pills were tested and weighed.  See PSR ¶ 10.  Those 35 pills weighed 14.589 grams and all tested positive for methamphetamine.  See id.  Because all 76 pills were identical, the total weight was calculated on the assumption that all contained methamphetamine and were of the same weight.  See id. and n.1.  The defendant stipulated in the plea agreement to the drug amount.  See Plea Agreement ¶ 2.

possession of a controlled substance in the seventh degree in Richmond County, New York. See id.

The defendant also has a history of drug-related arrests and convictions dating back to 2007. In 2007, he was sentenced to a year imprisonment for attempted criminal possession of a controlled substance in the third degree, after being found with marijuana and more than 1.5 ounces of cocaine. See id. ¶ 29. In 2016, the defendant was sentenced to one year imprisonment for attempted criminal possession of a controlled substance in the third degree. See id. ¶ 32. That conviction resulted from a traffic stop during which police recovered 135 glassines of heroin and 22 oxycodone pills from the defendant's person and in the vehicle that he alone occupied. See id. A subsequent search of his home found an additional 13 alprazolam pills and marijuana. See id. Also in 2016, the defendant was sentenced to 18 months' imprisonment for criminal possession of a controlled substance in the seventh degree after police discovered 32 glassines of heroin in his vehicle and on his person during a separate May 2016 traffic stop. See id. ¶ 31. In 2019, the defendant was sentenced to 42 months' imprisonment for criminal sale of a controlled substance in the third degree after selling cocaine to an undercover officer in June 2018. See id. ¶ 33.

These numerous convictions establish that the defendant is in Criminal History Category IV.[2]

II.     Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." United States v. Sindima, 488 F.3d 81, 87 (2d Cir. 2007) (quotation omitted, alterations in original). "[W]here the sentence is outside an advisory Guidelines range, the court must also state 'the specific reason' for the sentence imposed, in open court as well as in writing – 'with specificity in a statement of reasons form' that is part of the judgment." United States v. Aldeen, 792 F.3d 247, 251-52 (2d Cir. 2015), as amended July 22, 2015 (quoting 18 U.S.C. § 3533(c)(2)).

---

[2]     The plea agreement entered into between the government and the defendant calculated that the defendant was a Criminal History Category V. The government agrees that Criminal History Category IV is correct.

3

Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, 18 U.S.C. § 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Thus, the Court must first calculate the correct Guidelines range and then apply the Section 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of [the Guidelines] throughout the sentencing process." Gall, 552 U.S. at 50 n.6. To the extent there remain any open issues as to the correct Guidelines range, the Court should first make any necessary finding to arrive at the correct range. However the Court arrives at the correct Guidelines range, it still must fashion a sentence that meets the criteria of Section 3553(a) under the specific facts of this case.

III.   Guidelines Calculation

The government agrees with the Probation Department's calculation of the Guidelines Offense Level, which is as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. § 2D1.1(a)(5) and (c)(10)) | 20 |
| Firearm Possessed (U.S.S.G. § 2D1.1(b)(1)) | +2 |
| Timely Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total Offense Level | 19 |

PSR ¶¶ 17-27.[3]  Based on the defendant's criminal history, the defendant is in Criminal History Category IV.  Id. ¶ 29.  Accordingly, the applicable Guidelines range is 46 to 57 months' imprisonment.  Id. ¶ 65.

The plea agreement incorrectly estimated that the defendant's Guidelines range of imprisonment was 57 to 71 months.  Although the plea agreement reached the same conclusion as the PSR with respect to the offense level, it incorrectly estimated that the defendant was in Criminal History Category V.

IV.     A Sentence of 46 to 57 Months' Imprisonment Is Appropriate

The government respectfully requests that the Court impose a sentence of 46 to 57 months' imprisonment, which is consistent with the applicable Guidelines range.  Such a sentence is sufficient, but not greater than necessary, to reflect the defendant's disregard for the law, and the need for specific and general deterrence.

The nature and circumstances of the offense—possession of a firearm by a previously convicted felon—are serious in any case because felons are "persons who, by their actions, have demonstrated that they are dangerous or that they may become dangerous" and "they may not be trusted to possess a firearm without becoming a threat to society."  See United States v. Dillard, 214 F.3d 88, 95-96 (2d Cir. 2000).  While carrying a significant quantity of drugs and drug-dealing paraphernalia, the defendant also possessed a firearm that was not only loaded but also had a round in the chamber.  The defendant was ready to use this deadly weapon when police found him.

The riskiness of the defendant's conduct and his contempt for the law are clearly apparent.  The defendant is a recidivist who has been repeatedly convicted of other crimes, receiving four custodial sentences over the last 18 years.  The defendant's prior convictions and sentences have failed to deter him from committing yet another firearms offense.  Ultimately, shorter periods of incarceration have failed to deter the defendant from engaging in additional serious criminal conduct.  Indeed, the defendant has repeatedly demonstrated that his prior sentences and periods of supervision were woefully insufficient to deter him from future crimes.  He has been given several opportunities to change his criminal ways and has failed to do so.  A substantial sentence is therefore necessary both to deter specifically this defendant and to send a clear message to others that the unlawful possession of a firearm will result in a substantial prison sentence.  Additionally, a substantial term of incarceration will protect the public from further crimes of the defendant.

Courts in this District regularly impose significant sentences of imprisonment for possession of firearms.  See, e.g., United States v. Steven Carter, No. 20-CR-295 (WFK) (sentence of 70 months; Guidelines were 57-71 months); United States v. Dimitrius Edwards, No. 20-CR-111 (CBA), (sentence of 70 months; Guidelines were 70-87 months); United States

---

[3]     The two counts of the indictment are grouped because one of the counts (i.e., being a felon in possession of a firearm) is an adjustment to another count (i.e., the possession of methamphetamine with intent to distribute).  See PSR ¶ 16 (citing U.S.S.G. § 3D1.2(c)).

5

v. Samuel Moore, No. 21-CR-270 (WFK) (sentence of 57 months; Guidelines were 46-57 months); United States v. Louis Moore, No. 22-CR-222 (AMD) (sentence of 63 months; Guidelines were 63-78 months); United States v. Davon Morrison, No. 21-CR-630 (EK) (sentence of 42; Guidelines were 37-46 months); United States v. Tyrelle Newell, No. 21-CR-375 (DG) (sentence of 27 months; Guidelines were 21-27 months).

In light of all the factors set forth herein, a sentence of 46 to 57 months' imprisonment would be sufficient, but no greater than necessary, to achieve the purposes of sentencing set forth at 18 U.S.C. § 3553(a).

V.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of between 46 and 57 months' imprisonment.

                              Respectfully submitted,

                              JOSEPH NOCELLA, JR.
                              United States Attorney

By:     /s/ Vincent Chiappini
       Vincent Chiappini
       Assistant U.S. Attorney
       (718) 254-6299


cc:     Clerk of Court (PKC) (by E-Mail and ECF)
        Kyla Wells, Esq. (by E-Mail and ECF)
        U.S. Probation Officer Maxine Marquez (by E-Mail)